IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ALBERTO JULIO GARCIA                                                                          PETITIONER

v.                                                                   CIVIL ACTION NO. 1:24-CV-52-HSO

BURL CAIN, *et al.*                                                                         RESPONDENTS

<u>MEMORANDUM OPINION AND ORDER DENYING MOTION TO STAY [31]
AND DENYING MOTION TO DISMISS [23]</u>

In this capital habeas case, Petitioner Alberto Julio Garcia was convicted of capital murder in the commission of felony sexual battery and sentenced to death in the Circuit Court of Harrison County, Mississippi. After he asked this Court to issue a writ of habeas corpus vacating his conviction and sentence, the State filed a Motion to Dismiss [23] the Petition [21] on grounds that it contained both exhausted and unexhausted claims. Petitioner responded by filing a Motion to Stay [31] the case while he exhausts claims in a successive post-conviction proceeding in state court. For the reasons provided below, the Court denies both motions.

I. BACKGROUND

On July 16, 2014, Alberto Julio Garcia raped and murdered Ja'Naya Thompson, a five-year-old girl who lived in his apartment complex. Garcia vaginally and anally raped Thompson before hanging her by the neck with a pair of socks tied to a window crank. In October 2015, he was indicted for capital murder in the commission of felony sexual battery. Over the next year, the trial court denied pretrial motions by Garcia's counsel related to the suppression of statements he had made to

police, a change of venue, the exclusion of certain evidence, and his competency to stand trial. In January 2017, Garcia pleaded guilty and waived his right to sentencing by a jury. After a three-day sentencing hearing, the trial court sentenced him to death.

During the sentencing hearing, the prosecution called Dr. Mark LeVaughn, the State Medical Examiner, as an expert in forensic pathology. [24-10], at 4.[1] In broad terms, he testified that Thompson had been raped before she died, and that she had died by strangulation. *Id.* at 9-11, 13. In forming these opinions, he reviewed crime scene photos, photographs of the victim's body taken during the autopsy by Officer Grant Koon, and a report prepared by Dr. Paul McGarry, the freelance pathologist who performed the autopsy. *Id.* at 5-6; [24-9], 50-51.

LeVaughn began his testimony by reciting measurements taken by Dr. McGarry during the autopsy. *Id.* at 6. He then described "blunt penetrating injury" to Thompson's genital and rectal areas he had observed in the autopsy photographs. *Id.* at 7-11. He testified that Thompson was alive when these injuries were inflicted, and that she would have suffered "pain and terror." *Id.* at 9-11. LeVaughn then described injuries to Thompson's neck which he believed demonstrated that she had died from "ligature strangulation or hanging." *Id.* at 12-13. Finally, he described abrasions around Thompson's ear which showed that she had attempted to free herself from the socks Garcia used to hang her. *Id.* at 13.

---

[1] The state court record is contained in this Court's docket entries [24], [25], and [26]. When citing to the record, the Court will refer to the relevant docket entry and page number.

2

LeVaughn was not present during the autopsy, and he did not take the photographs he viewed in forming his opinions, nor did he personally view Thompson's body. He admitted that he had reviewed McGarry's autopsy report, and that he based his forensic opinions on it, at least in part. *Id.* at 14. McGarry did not testify, and Garcia did not object to LeVaughn's testimony at trial.

On appeal, Garcia claimed that LeVaughn's testimony constituted improper "surrogate testimony" for McGarry because the autopsy had provided the basis for LeVaughn's opinions. Thus, he argued that the trial court's admission of LeVaughn's testimony violated the Sixth Amendment's Confrontation Clause because he had no opportunity to cross-examine McGarry.

The Mississippi Supreme Court disagreed. *Garcia v. State ("Garcia I")*, 300 So. 3d 945, 976 (Miss. 2020). It held that the "State did not admit Dr. McGarry's autopsy report through Dr. LeVaughn," but LeVaughn "gave his *independent* expert opinion . . . ." *Id.* LeVaughn may have "rel[ied] in part on Dr. McGarry's autopsy report and Officer Koon's autopsy photos to form his expert opinion," but that did not render his opinion improper "surrogate testimony." *Id.* The Mississippi Supreme Court added that LeVaughn had not been asked to recite or discuss McGarry's out-of-court statements, but that even if he had, such statements did not violate the Confrontation Clause if admitted for a purpose other than to prove the truth of the matter asserted. *Id.* at 976-77 (citing *Bullcoming v. New Mexico*, 564 U.S. 647, 673 (2011); *Williams v. Illinois*, 567 U.S. 50, 67 (2012)).

3

Garcia initiated two separate post-conviction proceedings. In one, he challenged his guilty plea, and in the other, he challenged his sentence. The Mississippi Supreme Court rejected his claims in each of them. *See Garcia v. State ("Garcia II")*, 356 So. 3d 101 (Miss. 2023) (rejecting post-conviction relief related to sentence); *Garcia v. State ("Garcia III")*, 369 So. 3d 511 (Miss. 2023) (rejecting post-conviction relief related to guilty plea).

In February 2024, Petitioner commenced this capital habeas case by seeking appointment of counsel. A few months later, in June 2024, the United States Supreme Court released its opinion in *Smith v. Arizona*, 602 U.S. 779 (2024), in which it applied the Confrontation Clause "to a case in which an expert witness restate[d] an absent lab analyst's factual assertions to support his own opinion testimony." *Id.* at 783. The Supreme Court explained: "The Sixth Amendment's Confrontation Clause guarantees a criminal defendant the right to confront the witnesses against him," and it ordinarily "bars the admission at trial of 'testimonial statements' of an absent witness unless she is 'unavailable to testify, and the defendant has had a prior opportunity' to cross-examine her." *Id.* This "prohibition applies in full to forensic evidence. So a prosecutor cannot introduce an absent laboratory analyst's testimonial out-of-court statements to prove the results of forensic testing." *Id.* (citing *Melendez-Diaz v. Massochusetts*, 557 U.S. 305, 307 (2009)).

Previous decisions had provided that "the Confrontation Clause's requirements apply only when the prosecution uses out-of-court statements for 'the truth of the matter asserted.'" *Id.* (citing *Crawford v. Washington*, 541 U.S. 36, 60 n.

4

9 (2004)). In *Smith*, the Supreme Court clarified that "[w]hen an expert conveys an absent analyst's statements in support of his opinion, and the statements provide that support only if true, then the statements come into evidence for their truth." *Id.* Accordingly, if the absent analyst's statements are testimonial, then the Confrontation Clause bars their admission. *Id.*

In September 2024, Garcia filed his Petition for Writ of Habeas Corpus [21] in this Court. Among other things, he contends that his sentence must be set aside because the trial court admitted and relied on "surrogate testimony" by Dr. Mark LeVaughn in violation of the Confrontation Clause, citing *Smith*. [21], at 99-105. The State then filed a Motion to Dismiss [23], arguing that Garcia has not exhausted his state-court remedies for seventeen of the twenty-four claims advanced in the Petition. [23], at 4. It further contends that most of Garcia's claims are procedurally barred and thus technically exhausted. *Id.* at 7. In response to the State's Motion to Dismiss [23], Garcia filed a Motion to Stay and Abey [31] the case while he pursues a successive petition for post-conviction relief in the Mississippi Supreme Court. Both motions are ripe for the Court's review.

## II. DISCUSSION

### A. Petitioner's Motion to Stay [31]

This capital habeas case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* 28 U.S.C. § 2254(a). AEDPA limits district courts' ability to grant habeas relief. *See, e.g.*, 28 U.S.C. § 2254(d). It was designed to "curb the abuse of the statutory writ of habeas corpus, . . . to address the acute problems of

5

unnecessary delay and abuse in capital cases," *Graham v. Johnson*, 168 F.3d 762, 764 (5th Cir. 1999), and to "further the principles of comity, finality, and federalism," *Williams v. Taylor*, 529 U.S. 420, 436 (2000). Accordingly, a federal habeas petitioner "must exhaust all claims in state court prior to requesting federal collateral relief." *Smith v. Quarterman*, 515 F.3d 392, 400 (5th Cir. 2008); *see also* 28 U.S.C. § 2254(b)(1)(A). "The exhaustion requirement is satisfied when the substance of the federal habeas claim has been fairly presented to the highest state court." *Smith*, 515 F.3d at 400 (citation omitted).

Generally, district courts should dismiss mixed petitions – habeas petitions that include both exhausted and unexhausted claims. *Strickland v. Thaler*, 701 F.3d 171, 174 (5th Cir. 2012). Yet "because exhaustion is based on comity rather than jurisdiction, there is no absolute bar to federal consideration of unexhausted habeas applications." *Id.* A district court may deny an unexhausted claim on the merits, "notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." *Id.*

District courts also have discretion to stay a habeas case containing a mixed petition, to allow the petitioner to present his unexhausted claims to the state court and later return to federal court for review of his perfected petition. *Rhines v. Weber*, 544 U.S. 269, 274-79 (2005). Such stays should only be available in "limited circumstances," where "the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* at 277. "[E]ven if a petitioner had good cause for that failure, the district court would abuse its discretion

if it were to grant him a stay when his unexhausted claims are plainly meritless." *Id.* Finally, mixed petitions "should not be stayed indefinitely." *Id.* The Court should impose "reasonable time limits" on the trip back to state court and "condition the stay" on the petitioner pursuing the unexhausted claims in state court shortly after the stay being granted. *Id.* at 278.

In summary, "if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics," then "the district court should stay, rather than dismiss, the mixed petition." *Id.* If the Court determines that a stay is not merited, it "should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." *Id.*

1. <u>Ground 5 – Confrontation Clause</u>

Petitioner first argues that the Court should stay the case so that he can exhaust Ground 5, in which he claims that the admission of surrogate expert testimony at his trial violated the Confrontation Clause. As discussed above, the Mississippi Supreme Court rejected this claim on appeal. *Garcia I*, 300 So. 3d at 976-77. Petitioner contends that the United States Supreme Court's subsequent decision in *Smith v. Arizona* clarified the applicable law and rejected the reasoning underlying the Mississippi Supreme Court's decision. He therefore contends that the Court should stay this case and permit him to exhaust an argument premised on *Smith*.

Petitioner asserts that a subsequent change in the applicable law constitutes good cause for his failure to exhaust this line of argument.[2] "There is little authority on what constitutes good cause to excuse a petitioner's failure to exhaust." *Blake v. Baker*, 745 F.3d 977, 980 (9th Cir. 2014). At least two Courts of Appeals – including the Fifth Circuit – have characterized "good cause" as an "equitable" standard. *Ruiz v. Quarterman*, 504 F.3d 523, 529 n. 17 (5th Cir. 2007); *Blake*, 745 F.3d at 982. And at least one district court in the Fifth Circuit has suggested that a retroactive change in the federal law applicable to one of a petitioner's claims can provide good cause for a *Rhines* stay. *Folse v. Kent*, Civ. No. 18-121-BAJ-SDJ, 2020 WL 7753075, at *1-*2 (M.D. La. Dec. 29, 2020). The Court will assume, without deciding, that a retroactive change in the federal law applicable to one of a petitioner's claims would constitute good cause for a *Rhines* stay.

Even so, a *Rhines* stay is unavailable here because Petitioner admits that there has not been a retroactive change in the law applicable to one of his claims. Petitioner wants the Court to stay this case so that he can reargue to the Mississippi Supreme Court that the trial court violated his Sixth Amendment right to confront the

---

[2] The State contends that Petitioner already exhausted his Confrontation Clause claim. AEDPA's "exhaustion requirement is satisfied when the substance of the federal claim is fairly presented to the highest state court on direct appeal or in post-conviction proceedings, even if the state court fails to address the federal claim." *Johnson v. Cain*, 712 F.3d 227, 231 (5th Cir. 2013). A claim is "fairly presented when the petitioner asserts the claim in terms so particular as to call to mind a specific right protected by the Constitution or alleges a pattern of facts that is well within the mainstream of constitutional litigation." *Id.* "It is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (internal citation omitted). Rather, "the state court system must have been presented with the same facts and legal theory upon which the petitioner bases his current assertions." *Ruiz v. Quarterman*, 460 F.3d 638, 643 (5th Cir. 2006). The Court will assume, without deciding, that the Confrontation Clause claim asserted in Ground 5 is unexhausted.

pathologist who wrote the autopsy report on which the State's expert relied. He explicitly argued in his reply brief that "*Smith v. Arizona* did not issue a new rule," thus acknowledging that there has not been an intervening change in the applicable federal law. *See* [40], at 8. Rather, Garcia contends that *Smith* merely applied an existing rule of criminal procedure.[3] If *Smith* only applied an existing rule of criminal procedure that he already argued to the Mississippi Supreme Court, then nothing needs to be exhausted, and Petitioner has not shown good cause for a stay. *Lampkin v. Dir., TDCJ-CID*, No. 6:16-CV-1028, 2017 WL 4129320, at *2 (E.D. Tex. Sept. 15, 2017) (where petitioner had not pointed to, among other things, an "intervening change in controlling law," a stay was not merited).

Moreover, a *Rhines* stay is unavailable here because *Smith* does not apply retroactively to Petitioner's Confrontation Clause claim. "A new rule of criminal procedure applies to cases on direct review, even if the defendant's trial has already concluded." *Edwards*, 593 U.S. at 262. But "a new rule of criminal procedure ordinarily does not apply retroactively to overturn final convictions on federal *collateral* review." *Id.*

There are two exceptions to this rule. First, a new rule of criminal procedure applies retroactively on collateral review "if it places certain kinds of primary, private

---

[3] To be clear, the Court need not presently determine whether *Smith* announced a new rule or otherwise constituted an intervening change in the law applicable to one of Petitioner's claims. *But see Edwards v. Vannoy*, 593 U.S. 255, 265 (2021) ("A rule is new unless it was dictated by precedent existing at the time the defendant's conviction became final. . . . [A] rule is new unless, at the time the conviction became final, the rule was already apparent to all reasonable jurists.").

9

individual conduct beyond the power of criminal law-making authority to proscribe." *Teague v. Lane*, 489 U.S. 288, 311 (1989). But that is not the case here.

Next, "watershed rules of criminal procedure" should be applied retroactively. *Id.* This exception is "extremely narrow and applies only when, among other things, the new rule alters our understanding of the bedrock procedural elements essential to the fairness of a proceeding." *Edwards*, 593 U.S. at 267 (punctuation omitted). The Supreme Court has "identified only one pre-*Teague* procedural rule as watershed: the right to counsel recognized in the Court's landmark decision in *Gideon v. Wainwright* . . . ." *Id.* "Moreover, the Court has flatly proclaimed on multiple occasions that the watershed exception is unlikely to cover any more new rules," *id.*, and it has held that a similar case announcing a new rule governing the admission of out-of-court statements was not a "watershed" case, *Whorton v. Bockting*, 549 U.S. 406, 421 (2007). Accordingly, this Court concludes that *Smith* did not announce a "watershed" rule of criminal procedure that applies retroactively to overturn final convictions on collateral review. *See Hisler v. Royce*, No. 1:21-CV-3676, 2025 WL 903847, at *13 (E.D.N.Y. Mar. 25, 2025) (holding that *Smith* does not apply retroactively on federal collateral review).[4] So Petitioner has neither demonstrated that *Smith* worked a

---

[4] *Cf. Symms v. Wingard*, No. 15-CV-1384, 2019 WL 426484, at *9 (W.D. Penn. Feb. 4, 2019) (holding that *Melendez-Diaz*, 557 U.S. at 324, 329, which addressed whether the admission of certificates of lab analysts stating the quantity of seized drugs violated the Confrontation Clause, was not a watershed rule that applied retroactively); *Gilchrist v. United States*, No. DKC 08-1218, 2012 WL 4520469, at *10 (D. Mar. Sept. 27, 2012) (holding that *Melendez-Diaz* was not a watershed rule that applied retroactively).

10

retroactive change in the law applicable to one of his claims nor established that the decision provides good cause for a *Rhines* stay. *Folse*, 2020 WL 7753075, at *1-*2.

## 2. Ground 4a – Intellectual Disability

Citing *Atkins v. Virginia*, 536 U.S. 304 (2002), Petitioner next argues that the Court should stay this case so that he can exhaust Ground 4a, in which he claims that he is intellectually disabled and thus categorically ineligible for the death penalty. He maintains that his post-conviction counsel's failure to raise this claim constitutes good cause for his failure to exhaust. *See* [33], at 12-13, 40. He is mistaken because the Fifth Circuit has explicitly held that the ineffective assistance of post-conviction counsel "cannot serve as 'good cause' for a *Rhines* stay." *Tong v. Lumpkin*, 90 F.4th 857, 863 (5th Cir. 2024).[5]

Petitioner also argues that the categorical nature of the *Atkins* exclusion provides good cause for his failure to exhaust, citing *Brown v. Rogers*, No. 1:99-CV-549, 2017 WL 1134374, at * (S.D. Ohio Mar. 27, 2017). *See, e.g.*, [33], at 40. But the district court in *Brown* did not grant the petitioner's motion to stay because of the categorical nature of the *Atkins* exclusion. *See Brown*, 2017 WL 1134374, at *7. Therefore, Petitioner has cited no authority supporting his argument that the categorical nature of the *Atkins* exclusion provides good cause for a *Rhines* stay,[6] and he has not established good cause for his failure to exhaust the *Atkins* claim.

---

[5] *See also Williams v. Thaler*, 602 F.3d 291, 309 (5th Cir. 2010), *abrogated on other grounds by Thomas v. Lumpkin*, 995 F.3d 432, 440 (5th Cir. 2021); *Dickerson v. Cain*, No. 3:21-CV-465-TBM, 2024 WL 779261, at *20 (S.D. Miss. Feb. 26, 2024); *Guevara-Pontifes v. Baker*, No. 3:20-CV-652-ART-CSD, 2022 WL 4448259, at *4 (D. Nev. Sept. 23, 2022).
[6] Indeed, if the categorical nature of the *Atkins* exclusion provides good cause for a *Rhines* stay, then a stay might be available in every capital habeas case where a petitioner asserted an unexhausted

11

### 3. Ground 4b – Ineffective Assistance of Counsel re: Intellectual Disability

Petitioner also asserts that the Court should stay this case so that he can exhaust Ground 4b, in which he claims that his trial counsel provided ineffective assistance by failing to investigate and raise his alleged intellectual disability. [33], at 12-13. He argues that his post-conviction counsel's failure to assert this claim constitutes good cause for his failure to exhaust. As noted above, the ineffective assistance of post-conviction counsel "cannot serve as 'good cause' for a *Rhines* stay." *Tong*, 90 F.4th at 863.[7] This is insufficient to establish good cause for Petitioner's failure to exhaust this claim.

### 4. Grounds 1, 3, 6, 11, 9, and 12

Petitioner posits that Grounds 1, 3, 6, 11, 9, and 12 were not exhausted in state court because his post-conviction counsel provided ineffective assistance. *See* [33], at 13, 16, 18, 21-23, 33, 35, 37. But the ineffective assistance of post-conviction counsel "cannot serve as 'good cause' for a *Rhines* stay." *Tong*, 90 F.4th at 863.

---

*Atkins* claim, no matter how many previous chances they had to develop it. Yet the Fifth Circuit has held that unexhausted *Atkins* claims should be dismissed like any other unexhausted claim. *See Moore v. Quarterman*, 533 F.3d 338, n. 2 (5th Cir. 2008) ("If a petitioner did not exhaust the *Atkins* claim by presenting it fairly to the state courts, the federal court ordinarily must . . . dismiss or deny the petition."); *cf. In re Sparks*, 944 F.3d 572, 574 (5th Cir. 2019) (rejecting unexhausted *Atkins* claim asserted a month before execution date).

[7] To the extent Petitioner argues his post-conviction counsel's failure to investigate the alleged intellectual disability as an independent habeas claim, it is plainly meritless because there is no constitutional right to effective post-conviction counsel. *See, e.g.*, *Davila v. Davis*, 582 U.S. 521, 529 (2017); *Coleman v. Thompson*, 501 U.S. 722, 752 (1991); *Jordan v. Cain*, --- F. Supp. 3d ---, No. 2:13-CV-301-TBM, 2024 WL 5401672, at *25 (S.D. Miss. Dec. 20, 2024).

### 5. Miscellaneous Claims

Finally, Garcia asserts that the Court should stay this case so that he can exhaust Grounds 2b, 5d, 13, 14, 15, 16, 21, and 23e, but he has offered no substantive briefing or argument related to these claims. *See* [33], at 37. Failure to adequately brief an argument constitutes waiver. *See, e.g.*, *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998); *Barnes v. Johnson*, 184 F.3d 816, 1999 WL 499655, at *3 (5th Cir. 1999). He adds that his post-conviction counsel's failure to assert these claims constitutes good cause for his failure to exhaust them, but, as noted above, it does not. *See Tong*, 90 F.4th at 863.

### 6. Summary

The Court finds that Petitioner has not established good cause for his failure to exhaust any of the foregoing claims. So it will deny his Motion to Stay [31].

### B. Respondents' Motion to Dismiss [23]

Citing Habeas Rule 4, Respondents filed a Motion to Dismiss [23] the Petition because it contains unexhausted claims, or, alternatively, to dismiss various claims because they are technically exhausted and/or procedurally defaulted.

Special rules govern petitions filed in this Court seeking relief under 28 U.S.C. § 2254. *See* Habeas Rule 1(a). The Habeas Rules supplant the Federal Rules of Civil Procedure to the extent that the Rules of Civil Procedure are "inconsistent with any statutory provision" of § 2254. *See* Habeas Rule 12; FED. R. CIV. P. 81(a)(4). The Court "does not have to rigidly apply rules which would be inconsistent or inequitable in the overall framework of habeas corpus," but, rather, it has "discretionary power" to

employ its own "judgment in promoting the ends of justice." Advisory Committee's Notes to Habeas Rule 12.

Habeas Rule 4 provides, in relevant part:

> The clerk must promptly forward the petition to a judge under the court's assignment procedure, and the judge must promptly examine it. If it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court, the judge must dismiss the petition and direct the clerk to notify the petitioner. If the petition is not dismissed, the judge must order the respondent to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

Habeas Rule 4. Some federal courts have held that "summary dismissal is inappropriate in habeas corpus proceedings 'unless it appears without a doubt that the petitioner can prove no set of facts which would entitle him to relief.'" *Knapp v. Henderson*, 1998 WL 778774, at *3 n. 5 (10th Cir. Nov. 9, 1998) (quoting *O'Blasney v. Solem*, 774 F.2d 925, 926 (8th Cir. 1985)).

Despite Rule 4 authorizing the Court to summarily dismiss a habeas petition when it "plainly appears . . . that the petitioner is not entitled to relief," the Supreme Court and Fifth Circuit have made it clear that "[a] motion to dismiss for failure to state a claim is an inappropriate practice in habeas." *Miramontes v. Driver*, 243 F. App'x 855, 856 (5th Cir. 2007) (citing *Browder v. Director, Dep't of Corr. of Ill.*, 434 U.S. 257, 269 n. 14 (1978)); *see also Nduzi v. Castro*, 2020 WL 3317107, at *3 n. 4 (W.D. Tex. June 18, 2020) (listing cases). And this Court has been reticent to summarily dismiss capital habeas cases before there has been a thorough briefing of the relevant facts and law. *See, e.g. Knox v. Cain*, No. 5:13-CV-241-KHJ, 2024 WL

24523, at *2 (S.D. Miss. Jan. 2, 2024); *Brown v. Cain*, No. 5:12-CV-91-HSO, 2022 WL 2898918, at *1 (S.D. Miss. July 21, 2022).

Here, Respondents cited Habeas Rule 4, but their motion appears more akin to one brought under Rule 12(b)(6), which is inappropriate in the habeas context. *Miramontes*, 243 F. App'x at 856. Respondents have not cited binding case law supporting summary dismissal under Habeas Rule 4 on the grounds of a procedural bar, nor have they articulated the standard of review the Court must apply under Habeas Rule 4.[8]

Regardless, having examined the Petition and the parties' briefs, the Court is of the view that summary dismissal would be inappropriate here, and that it would be prudent to address Respondents' arguments for dismissal after the parties have submitted more substantive briefing on the merits of Petitioner's claims.[9] Accordingly, the Court will deny the Motion to Dismiss [23], without prejudice to Respondents' right to raise these arguments in its final briefing on Petitioner's claims.

### III. CONCLUSION

If the Court determines that a stay is not merited, it "should allow the petitioner to delete the unexhausted claims and to proceed with the exhausted claims

---

[8] *But see Wolfe v. Johnson*, 565 F.3d 140, 169 (4th Cir. 2009) (holding that the "adequacy of a § 2254 petition will be judged on the face of the petition and any attached exhibits," and likening Rule 4 to Rule 12(b)(6)).

[9] Additionally, "[f]ederal review of a procedurally-barred claim is permitted . . . where the petitioner is able to demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law." *Garza v. Stephens*, 738 F.3d 669, 675 (5th Cir. 2013) (cleaned up). It does not "plainly appear[] from the petition and any attached exhibits" that Petitioner will be unable to demonstrate cause and prejudice upon a full briefing of the relevant facts and law. *See* Habeas Rule 4.

if dismissal of the entire petition would unreasonably impair the petitioner's right to obtain federal relief." *Rhines*, 544 U.S. at 278. But Respondents contend that several claims addressed in Petitioner's Motion to Stay [31] were already exhausted. *See, e.g.* [38], at 10-11, 25-27. Petitioner apparently agrees that these claims were presented to the Mississippi Supreme Court in some way, but he has presented new evidence and legal arguments here. *See* [40], at 14.

Therefore, the Court orders Petitioner to file an Amended Petition which includes no claims that the parties agree are unexhausted. The Court does not give Petitioner leave to otherwise amend his Petition. If there is a dispute over whether Petitioner exhausted a claim, or as to the extent of the exhaustion (i.e., the evidence and arguments the Court may consider in this habeas case), the parties are free to argue such in their final briefing, and the Court will address the issue in its final adjudication of Petitioner's claims.

Petitioner shall file an amended Petition within thirty days of the entry of this opinion, or no later than **June 9, 2025**. Respondents shall file an Answer to the Amended Petition on or before **August 8, 2025**, and Petitioner may file a rebuttal pleading on or before **September 8, 2025**. Petitioner shall file his memorandum of law in support of the Amended Petition on or before **December 8, 2025**. Respondents shall file a memorandum of law in opposition to the Amended Petition on or before **February 6, 2026**, and Petitioner may file a rebuttal brief on or before **March 9, 2026**.

**IT IS, THEREFORE, ORDERED AND ADJUDGED THAT**, for the reasons stated herein, Petitioner Alberto Julio Garcia's Motion to Stay [31] is **DENIED** and Respondents' Motion to Dismiss [23] is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 9th day of May, 2025.

                                  s/ Halil Suleyman Ozerden
                                  HALIL SULEYMAN OZERDEN
                                  CHIEF UNITED STATES DISTRICT JUDGE